AUSAs: Jun Xiang / Kathryn Wheelock / Timothy Ly

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**25 MAG 284**

UNITED STATES OF AMERICA

v.

ANDERSON ZAMBRANO-PACHECO,

Defendant.

**COMPLAINT**

Violation of 18 U.S.C. § 922(g)(2)

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

MICHAEL BONNER, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
**(Possession of a Firearm and Ammunition While a Fugitive from Justice)**

1. In or about January 2025, in the Southern District of New York and elsewhere, ANDERSON ZAMBRANO-PACHECO, the defendant, knowing he was a fugitive from justice, knowingly possessed a firearm and ammunition, to wit, a Smith and Wesson Pro Series 9mm pistol and Maxxtech and Federal Cartridge 9mm ammunition, and the firearm and ammunition were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(2).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Special Agent with Homeland Security Investigations and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Since at least in or about October 2024, I have been conducting an investigation of suspected members and affiliates of the transnational gang Tren de Aragua ("TDA"), including

ANDERSON ZAMBRANO-PACHECO, the defendant. A photograph of ZAMBRANO-PACHECO appears below:



4. Based on my training and experience, my review of publicly available social media accounts, my interviews of current and former self-identified TDA members, and my personal surveillance of individuals identified by witnesses as, or otherwise believed to be TDA members, I know that TDA is a violent transnational gang, originating in Venezuela, that has established a substantial foothold in the United States, including in New York City. I have also become aware that there are substantial intra-gang conflicts within TDA and that, in some cases, TDA members have disavowed the gang and described themselves as "Anti-Tren." I am aware that TDA members have engaged in numerous shootings and murders and that much of this violence is driven by hostilities between TDA and "Anti-Tren" members. Moreover, I am aware that a gang member's self-identification as TDA or "Anti-Tren" can be fluid and that the same gang member may switch between the two affiliations depending on time and context.

### The August 18, 2024 Home Invasion and Shooting

5. Based on my participation in this investigation, my review of documents, law enforcement records, and other evidence, including surveillance video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

   a. On or about August 18, 2024, at approximately 11:30 p.m., police officers in Aurora, Colorado responded to a residential neighborhood where witnesses had reported a shooting. One person was struck by gunfire during that shooting and died as a result.

   b. Video surveillance from an apartment building near the shooting showed that, at approximately 11:20 p.m., approximately six armed men made entry into two apartment units (the "Home Invasion"). Their entry into the units was captured by video surveillance, which showed the men carrying handguns and an assault rifle. One of the armed men—later identified to be ANDERSON ZAMBRANO-PACHECO, the defendant—was wearing a red baseball cap, a red hooded sweatshirt, blue pants, and white sneakers with black stripes, as shown below.



c.  Based on their investigation, law enforcement authorities in Colorado identified one of the participants in the Home Invasion—specifically, the person circled in green above above—to be ZAMBRANO-PACHECO. On or about September 17, 2024, a Senior Judge of the District Court of Arapahoe County, Colorado, issued a warrant for the arrest of ZAMBRANO-PACHECO based on an arrest affidavit seeking to charge ZAMBRANO-PACHECO with burglary in the first degree, in violation of Colorado Revised Statute ("C.R.S.") 18-4-202, and menacing, in violation of C.R.S. 18-3-206.

d.  On or about October 22, 2024, in connection with what appears to be separate criminal conduct, the District Attorney of Arapahoe County, Colorado, filed a Complaint and Information charging ZAMBRANO-PACHECO with: (i) two counts of first degree kidnapping, in violation of C.R.S. 18-3-301, (ii) one count of conspiracy to commit first degree kidnapping, in violation of C.R.S. 18-3-301 and 18-2-201, (iii) two counts of criminal extortion, in violation of C.R.S. § 18-3-207, (iv) one count of conspiracy to commit criminal extortion, in violation of C.R.S. § 18-3-207 and 18-2-201, and (v) one count of menacing, in violation of C.R.S. 18-3-206. A separate warrant was issued for the arrest of ZAMBRANO-PACHECO on the above charges.

e.  ZAMBRANO-PACHECO could not be located within Colorado to be arrested, and the arrest warrants remained pending until the January 28, 2025 arrest of ZAMBRANO-PACHECO described below.

f.  During the time that ZAMBRANO-PACHECO was a fugitive, the Home Invasion received considerable press attention. Video surveillance and still images showing the Home Invasion—including videos and images that showed ZAMBRANO-PACHECO—were widely circulated in news reports, the Internet, and social media. Some of these press reports identified ZAMBRANO-PACHECO by name and indicated that he was the subject of an active arrest warrant. For example, on or about September 25, 2024, a major news channel ran a story titled "All 6 armed men in viral Aurora apartment video are now known, police in Colorado say"

and that news story included ZAMBRANO-PACHECO's name, photograph, and the words "ACTIVE WARRANT."

<u>The January 28, 2025 Arrest of ZAMBRANO-PACHECO</u>

6.  Based on my participation in this investigation, my review of documents, law enforcement records, and other evidence, including surveillance video recordings, and my conversations with other law enforcement officers, I have learned, in substance and in part, the following:

   a.  On or about January 24, 2025, the Honorable Sarah L. Cave, United States Magistrate Judge, authorized a warrant ("Pen-Ping Warrant") for historical and prospective location data for a cellphone number used by ANDERSON ZAMBRANO-PACHECO, the defendant, who law enforcement officers believed had fled to New York City.

   b.  On or about January 28, 2025, data from the Pen-Ping Warrant showed that the cellphone used by ZAMBRANO-PACHECO was located in an apartment unit (the "Apartment") in a residential building on Ogden Avenue in the Bronx, New York. At approximately 6:00 a.m., I and other law enforcement officers made entry into the Apartment, after knocking and announcing.

   c.  The Apartment is a three-bedroom residence. ZAMBRANO-PACHECO and a woman whom he identified as his girlfriend (the "Girlfriend") were found inside one of the three bedrooms.

   d.  Near where ZAMBRANO-PACHECO was standing was a dresser. When law enforcement made entry into the room, the top drawer of the dresser was slightly ajar, and law enforcement could see what appeared to be a firearm (the "Firearm") inside the drawer. Law enforcement secured ZAMBRANO-PACHECO and the Girlfriend, opened the top drawer, and secured the Firearm. Below are photographs depicting the dresser drawer slightly ajar (on left) and pulled open (on right).



   e. The Firearm was a Smith and Wesson Pro Series 9mm pistol.

   f. The Firearm was loaded with nine rounds of 9mm ammunition, manufactured by Maxxtech and Federal Cartridge (FC) (collectively, the "Ammunition").

   g. Inside the bedroom, law enforcement also recovered two cellphones. Law enforcement dialed the cellphone number that was the subject of the Pen-Ping Warrant and one of the cellphones rung.

   h. ZAMBRANO-PACHECO was arrested on the basis of the state arrest warrants from Colorado. Thereafter, and in the presence of law enforcement, ZAMBRANO-PACHECO stated, in substance and in part, the following: (i) ZAMBRANO-PACHECO fled from Colorado because he understood that he was wanted by law enforcement in connection with the Home Invasion; (ii) ZAMBRANO-PACHECO was aware that other fugitives from the Home Invasion had been arrested in New York City;[1] and (iii) ZAMBRANO-PACHECO denied possessing the Firearm or knowing that it was inside the room.

   7. Based on my training and experience, and my communications with other law enforcement agents, including a Special Agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who is familiar with the manufacturing of firearms and ammunition, I am aware that the Firearm and Ammunition were not manufactured in the State of New York.

---

[1] On or about November 27, 2024, I and other law enforcement officers executed a warrant authorized by the Honorable Barbara Moses, United States District Judge, to search a premises in the Bronx, New York. Inside that premises, law enforcement arrested two other fugitives who had been charged with crimes in connection with the Home Invasion.

WHEREFORE, I respectfully request that ANDERSON ZAMBRANO-PACHECO, the defendant, be arrested, and imprisoned or bailed, as the case may be.

_____
MICHAEL BONNER
Homeland Security Investigations

Sworn to me before me,
this 29th day of January, 2025

_____
THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York